UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH,

                    Plaintiffs,

        - against -

DETECTIVE GARY ALLEN, Shield No. 3900,
SERGEANT PATRICK SOCORRO, Shield No. 4665,
P.O. BRANDON AGOSTO, Shield No. 25108,
P.O. DESIREE ACOSTA-LIRIANO, Shield No. 19290,
P.O. JOHN BECK, Shield No. 15609,
LIEUTENANT JOSE VEGA, Shield No. 2118,
SERGEANT CRAIG ROACH, Shield No. 1345,
DETECTIVE MATTHEW CAHILL, Shield No. 22175,
DETECTIVE TIMOTHY RAMO, Shield No. 25633,
DETECTIVE MICHAEL PARIDES, Shield No. 7759,
DETECTIVE MICHAEL LANGLOIS, Shield No. 7671,
DETECTIVE PAUL McCARTNEY, Shield No. 28860,
DETECTIVE KEITH CONNELLY, Shield No. 0725,
CAPTAIN RONALD ZEDALIS, and
THE CITY OF NEW YORK,

                    Defendants.
------------------------------------------------------------------X

17 CV 3952 (RJD) (PK)

THIRD AMENDED
COMPLAINT AND
JURY TRIAL DEMAND

       Plaintiffs, KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH by their attorney, ALAN D. LEVINE, ESQ., complaining of the defendants herein, respectfully allege as follows:

## JURISDICTION

       1.     This is a civil action, seeking compensatory damages, punitive damages and attorney's fees.

       2.     This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the fourth and fourteenth amendments to the Constitution of the United States.

       3.     Jurisdiction is founded upon 28 U.S.C. §§1331, 1343 and 1367.

1

## VENUE

4.    Venue is properly alleged in the Eastern District of New York in that the acts complained of herein occurred within this District.

## JURY TRIAL DEMAND

5.    Plaintiffs hereby demand a trial by jury of all issues in this action that are so triable.

## PARTIES

6.    At all times relevant hereto, plaintiff KEVIN BAIJNAUTH was and is a natural person, resident in the County of Suffolk, State of New York.

7.    At all times relevant hereto, plaintiff MEENAKSHI BAIJNAUTH was and is a natural person, resident in the County of Suffolk, State of New York.

8.    At all times relevant hereto, plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH were and are husband and wife.

9.    At all times relevant hereto, defendant DETECTIVE GARY ALLEN, Shield No. 3900, (hereinafter "ALLEN") was and is a natural person, employed as a detective by defendant CITY OF NEW YORK.

10.    At all times relevant hereto, defendant SERGEANT PATRICK SOCORRO, Shield No. 4665, (hereinafter "SOCORRO") was and is a natural person, employed as a sergeant by defendant CITY OF NEW YORK.

11.    At all times relevant hereto, defendant P.O. BRANDON AGOSTO, Shield No. 25108, (hereinafter "AGOSTO") was and is a natural person, employed as a police officer by defendant CITY OF NEW YORK.

12.     At all times relevant hereto, defendant P.O. DESIREE ACOSTA-LIRIANO, Shield No. 19290, (hereinafter "ACOSTA-LIRIANO") was and is a natural person, employed as a police officer by defendant CITY OF NEW YORK.

13.     At all times relevant hereto, defendant P.O. JOHN BECK, Shield No. 15609, (hereinafter "BECK") was and is a natural person, employed as a police officer by defendant CITY OF NEW YORK.

14.     At all times relevant hereto, defendant LIEUTENANT JOSE VEGA, Shield No. 2118 (hereinafter "VEGA") was and is a natural person, employed as a lieutenant by defendant CITY OF NEW YORK.

15.     At all times relevant hereto, defendant SERGEANT CRAIG ROACH, Shield No. 1345, (hereinafter "ROACH") was and is a natural person, employed as a sergeant by defendant CITY OF NEW YORK.

16.     At all times relevant hereto, defendant DETECTIVE MATTHEW CAHILL, Shield No. 22175, (hereinafter "CAHILL") was and is a natural person, employed as a detective by defendant CITY OF NEW YORK.

17.     At all times relevant hereto, defendant DETECTIVE TIMOTHY RAMO, Shield No. 25633, (hereinafter "RAMO") was and is a natural person, employed as a detective by defendant CITY OF NEW YORK.

18.     At all times relevant hereto, defendant DETECTIVE MICHAEL PARIDES Shield No. 7759, (hereinafter "PARIDES") was and is a natural person, employed as a detective by defendant CITY OF NEW YORK.

3

19. At all times relevant hereto, defendant DETECTIVE MICHAEL LANGLOIS, Shield No. 7671, (hereinafter "LANGLOIS") was and is a natural person, employed as a detective by defendant CITY OF NEW YORK.

20. At all times relevant hereto, defendant DETECTIVE PAUL McCARTNEY, Shield No. 28860, (hereinafter "McCARTNEY") was and is a natural person, employed as a detective by defendant CITY OF NEW YORK.

21. At all times relevant hereto, defendant DETECTIVE KEITH CONNELLY Shield No. 0725, (hereinafter "CONNELLY") was and is a natural person, employed as a detective by defendant CITY OF NEW YORK.

22. At all times relevant hereto, defendant CAPTAIN RONALD ZEDALIS, (hereinafter "ZEDALIS") was and is a natural person, employed as a captain by defendant CITY OF NEW YORK.

23. At all times relevant hereto, defendant CITY OF NEW YORK was and is a municipal corporation, organized and existing pursuant to the laws of the State of New York.

24. The individual defendants are sued in their individual capacities.

25. On or about May 20, 2016, and May 8, 2017, these dates being within ninety (90) days after the respective claims herein sued upon accrued, plaintiffs served upon the Comptroller of the City of New York verified written notices of claim setting forth the time, place, nature and manner in which said claims arose.

26. More than thirty (30) days have elapsed since the aforementioned verified notices of claim were served and the Comptroller has neglected and refused to make payment of said claims.

4

27.     This action is commenced within one year and ninety days from the dates all claims herein accrued.

**AS AND FOR A FIRST CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFFS**
**KEVIN BAIJNAUTH AND MEENAKSHI BAIJNAUTH**
**AGAINST DEFENDANTS SOCORRO, AGOSTO,**
**CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY,**
**CONNELLY, ZEDALIS and THE CITY OF NEW YORK**
**(42 U.S.C. §1983)**

28.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "27" hereinabove as if more fully set forth at length herein.

29.     At all times relevant hereto, plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH leased the premises 452 Sutter Avenue, County of Kings, City and State of New York (hereinafter "subject premises").

30.     At all times relevant hereto, plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH owned a business at the subject premises called Aliyah's Gold Exchange, which operates as a general secondhand dealer.

31.     At all times relevant hereto, Mr. Mona S. Singh and Mr. Scottie Sookdeo were and are employees of Aliyah's Gold Exchange.

32.     On or about April 5, 2016, at approximately 9:00 P.M., defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY and ZEDALIS, dressed in riot gear, used a battering ram to attempt to enter the subject premises.

33.     Mr. Singh, who was present in the subject premises at the time, asked defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY and ZEDALIS, "What's going on?"

34.     Mr. Singh then opened the door for defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY, and ZEDALIS to enter.

35.     Defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY and ZEDALIS, entered the subject premises with guns drawn.

36.     One of the aforementioned defendants pointed a shotgun at Mr. Singh and asked him, "Where's the basement?"

37.     The subject premises does not have a basement.

38.     Upon seeing the shotgun in his face, Mr. Singh lay facedown on the floor and put his hands behind his back.

39.     One of the aforementioned defendants stood on the back of Mr. Singh's left knee.

40.     Two of the aforementioned defendants stepped on Mr. Singh's back.

41.     One of the aforementioned defendants who had stepped on Mr. Singh's back remained standing on his back while one or more of the aforementioned defendants rear-handcuffed him.

42.     Mr. Singh had received treatment for a herniated disc in approximately 2013 or 2014.

6

43.    Defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY, and ZEDALIS, conducted a search of the subject premises.

44.    During the aforementioned search, defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY, and ZEDALIS, destroyed plaintiffs KEVIN BAIJNAUTH's and MEENAKSHI BAIJNAUTH's surveillance system, which streamed a live feed of the activity in the subject premises to a computer located in plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH's residence, ripped sheetrock from the walls and ceiling, dumped the contents of the subject premises into its bathroom, broke several items, and took approximately $400.00 in cash and $350.00 in jewelry.  Photographs of the damage to the subject premises are annexed hereto as Exhibit "A."

45.    Mr. Singh asked defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY and ZEDALIS, "Why are you doing that?"

46.    One of the aforementioned defendants replied, "Someone doesn't like your boss."

47.    One or more of the aforementioned defendants escorted Mr. Singh out of the subject premises and placed him in an unmarked police vehicle.

48.    At the time Mr. Singh was escorted out of the subject premises, he was wearing only a short-sleeved t-shirt, shorts and socks.

49.     Defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY, and ZEDALIS, did not allow Mr. Singh to put on his shoes.

50.     Mr. Singh remained in the unmarked police vehicle for approximately five minutes.

51.     Mr. Singh was then moved to a marked police van.

52.     Mr. Singh was transported to the stationhouse of the 73rd Precinct.

53.     At the aforementioned stationhouse, Mr. Singh was placed in a holding cell for approximately three to four hours.

54.     A detective came to Mr. Singh's cell and told him that defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY and ZEDALIS, had not found anything at the subject premises, but that he was still going to be charged with possession of stolen property and possession of marijuana.

55.     Mr. Singh asked one of the officers in the precinct for medical attention because of pain he was experiencing in his back as a result of his having been stepped on.

56.     Mr. Singh was denied medical attention.

57.     Mr. Singh asked if he could use a telephone to call plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH.

58.     Mr. Singh's request was denied.

59.     After approximately three to four hours, Mr. Singh was transported to Central Booking Brooklyn.

8

60.     On April 6, 2016, at approximately 5:00 A.M., Mr. Singh was transported from Brooklyn Central Booking to Brookdale Hospital for treatment of his back pain.

61.     At the hospital, Mr. Singh was given an injection in his left arm.

62.     Mr. Singh was released from Brookdale Hospital at approximately 7:00 A.M., and was transported back to Central Booking Kings.

63.     On or about April 6, 2016, at approximately 2:30 P.M., Mr. Singh appeared before a Judge of the Criminal Court of the City of New York, County of Kings.

64.     One or more of the police officers who transported Mr. Singh from Central Booking Kings to the court gave him flip-flops to wear when he appeared before the judge.

65.     The judge dismissed the charge of possession of stolen property and issued an adjournment in contemplation of dismissal with regard to the charge of possession of marijuana.

66.     On or about April 6, 2016, at approximately 4:19 P.M., Mr. Singh was released from custody.

67.     Upon his release, Mr. Singh called plaintiff MEENAKSHI BAIJNAUTH to inform her that the subject premises had been searched by police officers and that he had been arrested.

68.     Plaintiff MEENAKSHI BAIJNAUTH checked the live feed on the computer in her residence and realized that the surveillance system was not working.

69.     Plaintiff MEENAKSHI BAIJNAUTH then called the phone number of the subject premises and found that the telephone therein was not working either.

70. Plaintiff MEENAKSHI BAIJNAUTH then called the telephone company and was told there was a loss of power in the subject premises.

71. Plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH left their residence to go to the subject premises.

72. Plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH arrived at the subject premises at approximately 6:55 P.M.

73. Plaintiff KEVIN BAIJNAUTH and Mr. Singh entered the subject premises to inspect the damage.

74. Following his inspection, plaintiff KEVIN BAIJNAUTH locked the door to the subject premises and drove to the stationhouse of the 73rd Precinct with Mr. Singh and plaintiff MEENAKSHI BAIJNAUTH.

75. When plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH and Mr. Singh arrived at the stationhouse of the 73rd Precinct, plaintiff KEVIN BAIJNAUTH remained in his vehicle while plaintiff MEENAKSHI BAIJNAUTH and Mr. Singh went into the aforementioned stationhouse to collect Mr. Singh's personal property and inquire about whether there was a warrant for the search that had been made.

76. One of the aforementioned defendants and a second New York City police officer, described as a bald, white male, met with plaintiff MEENAKSHI BAIJNAUTH and Mr. Singh.

77. The aforementioned second officer told plaintiff MEENAKSHI BAIJNAUTH that there was a no-knock warrant for the subject premises.

78. Plaintiff MEENAKSHI BAIJNAUTH asked for a copy of the warrant.

79. The aforementioned second officer told plaintiff MEENAKSHI BAIJNAUTH that he did not have to show her the warrant and that she would have to go to court to obtain a copy of it.

80. Plaintiff MEENAKSHI BAIJNAUTH asked the aforementioned officer, "What is a no-knock warrant?"

81. The aforementioned second officer replied, "Someone has a vendetta against you. People said you are selling guns and drugs in the basement."

82. Plaintiff MEENAKSHI BAIJNAUTH asked the aforementioned second officer, "Why did they rip my DVR out?"

83. The aforementioned second officer responded, "If the walls were not made of concrete, you would have no walls. We have to look anywhere something could be hidden."

84. The aforementioned second officer asked plaintiff MEENAKSHI BAIJNAUTH if the cameras in the subject premises recorded sound.

85. Plaintiff MEENAKSHI BAIJNAUTH replied that they did not.

86. The aforementioned second officer then said, "You're also buying stolen jewelry."

87. Plaintiff MEENAKSHI BAIJNAUTH denied this allegation.

88. The aforementioned second officer told plaintiff MEENAKSHI BAIJNAUTH, "We sent in an undercover female cop who said it [the jewelry] was stolen."

89. Upon hearing that he was being accused of buying stolen property, Mr. Singh stated, "You're lying."

90.     A woman had entered the subject premises on or about March 28, 2016, attempting to sell jewelry.   Mr. Singh had asked the aforementioned woman for identification.  She stated that she did not have any.  Mr. Singh had told her to come back with identification.   The woman, upon information and belief named Grace Rodriguez, returned on March 29, 2016, with identification and completed one transaction with Mr. Singh.   Ms. Rodriguez returned again on April 1, 2016, and completed a second transaction with plaintiff KEVIN BAIJNAUTH.  At no time during either transaction did Ms. Rodriguez state that the items she was selling were stolen. Upon information and belief, the person calling herself Grace Rodriguez was working for the police.

91.     The aforementioned second officer then told Mr. Singh and plaintiff MEENAKSHI BAIJNAUTH, "Maybe a CI [confidential informant] was in trouble and wanted help to get out of trouble."

92.     The aforementioned defendant told plaintiff MEENAKSHI BAIJNAUTH, "We didn't report it to BBB.  You're not Public Enemy No. 1."

93.     Plaintiff MEENAKSHI BAIJNAUTH and Mr. Singh left the stationhouse.

94.     To date, plaintiffs MEENAKSHI BAIJNAUTH and KEVIN BAIJNAUTH have not been arrested nor charged with any crimes relating to the search of the subject premises on April 5, 2016.

95.     Defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY and ZEDALIS, violated plaintiffs KEVIN BAIJNAUTH's and MEENAKSHI BAIJNAUTH's rights, guaranteed to them by the fourth amendment to the Constitution of the United States, to be secure in their persons,

papers and effects against unreasonable searches and seizures, in that, while acting under color of state law, defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY and ZEDALIS, as described hereinabove, improperly searched plaintiffs KEVIN BAIJNAUTH's and MEENAKSHI BAIJNAUTH's place of business without having a warrant therefor; maliciously and intentionally damaged and destroyed portions of plaintiffs KEVIN BAIJNAUTH's and MEENAKSHI BAIJNAUTH's place of business and items of their personal property.

96.    As a result of the aforementioned violations of rights guaranteed to plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH by the fourth and fourteenth amendments to the Constitution of the United States, defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY and ZEDALIS, caused plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH to suffer extreme mental anguish, lose time and income from their employment and incur expenses to repair the subject premises.

97.    As a result of the aforementioned denials of rights guaranteed to plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH by the fourth and fourteenth amendments to the Constitution of the United States, defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY and ZEDALIS, have damaged plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH in an amount sufficient to compensate them for their injuries as enumerated hereinabove. In addition, plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH seek punitive damages against defendants SOCORRO, AGOSTO, CAHILL, RAMO,

PARIDES, LANGLOIS, McCARTNEY, CONNELLY and ZEDALIS, both amounts to be determined at the trial of this action.

**AS AND FOR A SECOND CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFFS SOOKDEO,**
**KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH**
**AGAINST DEFENDANTS ALLEN,**
**ACOSTA-LIRIANO, BECK, VEGA, ROACH**
**and THE CITY OF NEW YORK**
**(42 U.S.C. §1983)**

98.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "97" hereinabove as if more fully set forth at length herein.

99.     On or about April 21, 2017, at approximately 6:30 P.M., Mr. Sookdeo was working at the subject premises.

100.     On the aforementioned date and time, a woman, described as Hispanic, approximately five feet, three inches tall, heavy set and having curly hair, entered the subject premises to sell jewelry that was in her possession.

101.     Upon information and belief, the aforementioned woman was defendant ACOSTA-LIRIANO.

102.     Defendant ACOSTA-LIRIANO asked Mr. Sookdeo if he could test the pieces of jewelry to determine whether they were made of real gold.

103.     Mr. Sookdeo tested the pieces of jewelry and determined they were made of real gold.

104.     Mr. Sookdeo asked defendant ACOSTA-LIRIANO if she was over the age of eighteen.

105.     Defendant ACOSTA-LIRIANO replied that she was.

14

106. Mr. Sookdeo asked defendant ACOSTA-LIRIANO if the jewelry was hers.

107. Defendant ACOSTA-LIRIANO responded that the jewelry belonged to her mother.

108. Mr. Sookdeo stated, "It's your mom's, right?"

109. Defendant ACOSTA-LIRIANO stated, "Yes."

110. Mr. Sookdeo stated, "As long as she knows what's up, we're good."

111. Defendant ACOSTA-LIRIANO stated in response, "It's my step mom's."

112. At no time did defendant ACOSTA-LIRIANO state to Mr. Sookdeo that she had taken the jewelry from her mother.

113. Mr. Sookdeo told defendant ACOSTA-LIRIANO that he needed to see identification.

114. Defendant ACOSTA-LIRIANO handed Mr. Sookdeo identification issued by the New York State Department of Motor Vehicles.

115. Mr. Sookdeo used his cell phone to take a picture of defendant ACOSTA-LIRIANO's aforementioned identification.

116. Mr. Sookdeo then finished the transaction with defendant ACOSTA-LIRIANO.

117. Defendant ACOSTA-LIRIANO left the subject premises.

118. Immediately after defendant ACOSTA-LIRIANO left the subject premises, defendants ALLEN, BECK, VEGA and ROACH, wearing police shields on chains around their necks, entered the subject premises.

119. Mr. Sookdeo telephoned plaintiff KEVIN BAIJNAUTH from his cell phone.

120.  Mr. Sookdeo informed plaintiff KEVIN BAIJNAUTH that police officers were entering the subject premises.

121.  Once they were inside the subject premises, two of the aforementioned defendants, one of whom, upon information and belief, was defendant BECK, told Mr. Sookdeo to open the door to the area behind the service window where he was standing.

122.  Defendant BECK jiggled the handle of the door.

123.  Mr. Sookdeo complied with the aforementioned request.

124.  Mr. Sookdeo asked defendants ALLEN, BECK, VEGA and ROACH, "Is everything good? Can I help you?"

125.  Upon information and belief, defendant VEGA told Mr. Sookdeo to have a seat and asked him to whom he was speaking on his cell phone.

126.  Mr. Sookdeo responded that he was speaking to the owner of the business.

127.  Mr. Sookdeo asked again, "Is everything okay?"

128.  Defendant VEGA responded, "Yes."

129.  Defendant VEGA then told Mr. Sookdeo that he had just purchased stolen property.

130.  Mr. Sookdeo responded, "I took her ID."

131.  Defendant VEGA asked to see the record books of the business.

132.  Mr. Sookdeo informed defendants ALLEN, BECK, VEGA and ROACH that the business keeps track of its transactions electronically, and that, therefore, there were no physical record books kept in the subject premises.

133.     Defendant VEGA told Mr. Sookdeo, "Get off the phone. You're a grown man."

134.     Mr. Sookdeo put his cell phone down on the desk in front of the service window.

135.     Defendant VEGA attempted to disconnect the phone call, but was unsuccessful.

136.     Mr. Sookdeo told defendants ALLEN, BECK, VEGA and ROACH that he wanted to cooperate.

137.     Mr. Sookdeo also informed defendants ALLEN, BECK, VEGA and ROACH that he has cerebral palsy.

138.     Mr. Sookdeo then said, "I should be okay, right?"

139.     Defendant VEGA said, "Nope."

140.     Mr. Sookdeo asked, "I'm not going to jail, right?"

141.     Defendant VEGA said, "Yes."

142.     Defendant VEGA said, "Cuff him up."

143.     Defendant ALLEN rear-handcuffed Mr. Sookdeo.

144.     Defendant BECK picked Mr. Sookdeo's phone up from the desk and asked him for the pass code to unlock it.

145.     Mr. Sookdeo gave defendant BECK his pass code.

146.     Mr. Sookdeo then told defendants ALLEN, BECK, VEGA and ROACH that he needed help walking because of his disability.

147.     Defendant VEGA asked Mr. Sookdeo, "Do you deal with Officer Beck?"

148. Mr. Sookdeo responded that he did not know because he is an employee.

149. Defendant VEGA said, "If you're an employee, you should know the rules."

150. Mr. Sookdeo told defendant VEGA, "I took a picture of her ID."

151. Defendant BECK asked where the picture was.

152. Mr. Sookdeo responded that the picture was on his cell phone.

153. Defendant BECK said, "Show it to me" and asked Mr. Sookdeo again for the pass code to his cell phone.

154. Mr. Sookdeo gave defendant BECK the pass code a second time.

155. Upon information and belief, defendant BECK intentionally and maliciously deleted the picture Mr. Sookdeo had taken of the woman's identification card.

156. Defendant BECK then picked up Mr. Sookdeo's wallet, which was located on a shelf near the desk, in front of the service window.

157. Defendant BECK opened Mr. Sookdeo's wallet, counted the money in it, and removed his identification.

158. Defendant BECK confiscated the jewelry Mr. Sookdeo had purchased from defendant ACOSTA-LIRIANO.

159. The entire encounter between Mr. Sookdeo and defendants ALLEN, BECK, VEGA and ROACH was audio and video recorded on plaintiffs KEVIN BAIJNAUTH's and MEENAKSHI BAIJNAUTH's surveillance system in the subject premises.

160.    Defendant ALLEN escorted Mr. Sookdeo out of the subject premises and placed him in an unmarked New York Police Department motor vehicle.

161.    Several police officers were present outside of the subject premises at the time Mr. Sookdeo was escorted to the aforementioned unmarked New York Police Department motor vehicle.

162.    Mr. Sookdeo was transported to the stationhouse of the 73rd Precinct by defendants ALLEN, BECK and VEGA.

163.    At the stationhouse, defendant ALLEN placed Mr. Sookdeo in a holding cell.

164.    During the time Mr. Sookdeo was in the aforementioned holding cell, one of the police officers present outside of the subject premises at the time of Mr. Sookdeo's arrest brought in another, unrelated, arrestee and exclaimed, "Good news, guys. This one doesn't have cerebral palsy."

165.    Mr. Sookdeo was held at the stationhouse until approximately 11:00 P.M., when he was given a desk appearance ticket.

166.    Mr. Sookdeo was falsely charged with possession of stolen property in the fifth degree, an A misdemeanor, upon the supporting depositions of defendants ACOSTA-LIRIANO and ALLEN, in which they falsely stated, "Deft was told by informant in sum and substance 'I took this from my mom because she kicked me out the house.'"

167.    Thus, defendants ACOSTA-LIRIANO and ALLEN fabricated probable cause and wrongfully, unlawfully and illegally initiated criminal proceedings against Mr. Sookdeo.

168. Mr. Sookdeo appeared in Criminal Court, County of Kings on multiple occasions regarding the charge against him.

169. The false and fabricated charge denied Mr. Sookdeo of his right to a fair trial or hearing at his arraignment and repeated court appearances.

170. The false statements by defendants ACOSTA-LIRIANO and ALLEN restricted Mr. Sookdeo's freedom of movement because the false statements were forwarded to the Kings County District Attorney's Office, causing Mr. Sookdeo to be prosecuted.

171. On or about August 14, 2017, Mr. Sookdeo received an adjournment in contemplation of dismissal with immediate sealing.

172. Defendants ALLEN, BECK, VEGA and ROACH violated plaintiffs KEVIN BAIJNAUTH's and MEENAKSHI BAIJNAUTH's rights, guaranteed to them by the fourth amendment to the Constitution of the United States, to be secure in their persons, papers and effects against unreasonable searches and seizures, in that, while acting under color of state law, defendants ALLEN, BECK, VEGA and ROACH, as described hereinabove, improperly searched plaintiffs KEVIN BAIJNAUTH's and MEENAKSHI BAIJNAUTH's place of business without having a warrant therefor.

173. As a result of the aforementioned violations of rights guaranteed to plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH by the fourth and fourteenth amendments to the Constitution of the United States, defendants ALLEN, BECK, VEGA and ROACH caused plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH to suffer extreme mental anguish and loss of time and income from their employment.

174. As a result of the aforementioned denials of rights guaranteed to plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH by the fourth and fourteenth amendments to the Constitution of the United States, defendants ALLEN, BECK, VEGA and ROACH have damaged plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH in an amount sufficient to compensate them for their injuries as enumerated hereinabove. In addition, plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH seek punitive damages against defendants ALLEN, BECK, VEGA and ROACH, both amounts to be determined at the trial of this action.

**AS AND FOR A THIRD CAUSE OF ACTION
OF BEHALF OF PLAINTIFFS KEVIN BAIJNAUTH
AND MEENAKSHI BAIJNAUTH
AGAINST THE CITY OF NEW YORK
(42 U.S.C. §1983)**

175. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "174" hereinabove as if more fully set forth at length herein.

176. Defendant CITY OF NEW YORK, acting through its Police Department and through the individual defendants hereto, maintained policies, practices, customs and usages that were a direct and proximate cause of the unconstitutional conduct alleged herein.

177. Upon information and belief, defendant CITY OF NEW YORK failed to provide any training to its police officers, either at its Police Academy or in service, either formally or informally, with regard to the constitutional prohibitions on causing unnecessary and excessive damage during the execution of searches of premises.

178.    Upon information and belief, defendant CITY OF NEW YORK maintained no written guidelines on the constitutional prohibitions on causing unnecessary and excessive damage during the execution of searches of presmises.

179.    Defendant CITY OF NEW YORK knew to a moral certainty that its police officers would be required to execute searches of premises and empowered them to do so. Therefore, the need to train officers in the constitutional limitations on causing unnecessary or excessive damage during the execution of a search was obvious.

180.    The failure of defendant CITY OF NEW YORK to train or provide guidelines to its police officers regarding the constitutional prohibitions on causing unnecessary and excessive damage during the execution of searches of premises amounts to deliberate indifference to the rights of persons with whom the police come into contact.

181.    Defendant CITY OF NEW YORK implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and/or customs of failing to train its police officers and of failing to implement guidelines on the constitutional prohibitions on causing unnecessary and excessive damage during the execution of searches of premises.

182.    By implementing, enforcing, encouraging, sanctioning, and/or ratifying the aforementioned policies, practices and/or customs, defendant CITY OF NEW YORK caused plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH to be subjected to excessive and/or unnecessary destruction of property during the search of their business premises, and to be deprived of their property without due process of law, in

violation of the rights guaranteed to them by the fourth and fourteenth amendments to the Constitution of the United States.

183. As a result of the foregoing, plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH suffered damage to their place of business and their personal property, loss of time and income from their employment and extreme mental anguish.

184. As a result of the aforementioned denials of the rights guaranteed to plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH by the fourth and fourteenth amendments to the Constitution of the United States, defendant CITY OF NEW YORK has damaged plaintiffs KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH in an amount sufficient to compensate them for their injuries as enumerated hereinabove.

WHEREFORE, plaintiffs, KEVIN BAIJNAUTH and MEENAKSHI BAIJNAUTH demand judgment against defendants DETECTIVE GARY ALLEN, Shield No. 3900, SERGEANT PATRICK SOCORRO, Shield No. 4665, P.O. BRANDON AGOSTO, Shield No. 25108, P.O. DESIREE ACOSTA-LIRIANO, Shield No. 19290, P.O. JOHN BECK, Shield No. 15609, LIEUTENANT JOSE VEGA, Shield No. 2118, SERGEANT CRAIG ROACH, Shield No. 1345, DETECTIVE MATTHEW CAHILL, Shield No. 22175, DETECTIVE TIMOTHY RAMO, Shield No. 25633, DETECTIVE MICHAEL PARIDES, Shield No. 7759, DETECTIVE MICHAEL LANGLOIS, Shield No. 7671, DETECTIVE PAUL McCARTNEY, Shield No. 28860, DETECTIVE KEITH CONNELLY, Shield No. 0725, CAPTAIN RONALD ZEDALIS and THE CITY OF NEW YORK, as follows:

23

FIRST CAUSE OF ACTION: An amount sufficient to compensate them for their injuries as enumerated hereinabove and, in addition, punitive damages against the defendants SOCORRO, AGOSTO, CAHILL, RAMO, PARIDES, LANGLOIS, McCARTNEY, CONNELLY and ZEDALIS, both amounts to be determined at the trial of this action;

SECOND CAUSE OF ACTION: An amount sufficient to compensate them for their injuries as enumerated hereinabove and, in addition, punitive damages against the defendants ALLEN, ACOSTA-LIRIANO, BECK, VEGA and ROACH, both amounts to be determined at the trial of this action; and

THIRD CAUSE OF ACTION: An amount sufficient to compensate them for their injuries as enumerated hereinabove.

In addition, plaintiffs demand the costs and disbursements of this action, including their attorney's fees, pursuant to 42 U.S.C. §1988.


Dated:  Kew Gardens, New York
        April 8, 2019

ALAN D. LEVINE, ESQ.
Attorney for Plaintiffs
80-02 Kew Gardens Road, Suite 307
Kew Gardens, New York 11415
(718) 793-6363
Our File No. 2357